**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LILY ROSSI,<br><br>        Plaintiff,<br><br>    v.<br><br>MPW INDUSTRIAL SERVICES, INC.;<br>PEDRO SALCITO; ASTON<br>AGUILERA; and JASON MARLOWE<br><br>        Defendants. | :<br>:<br>:<br>:  CIVIL ACTION NO.<br>:<br>:<br>:<br>:  PLAINTIFF DEMANDS A<br>:  TRIAL BY JURY<br>:<br>:<br>:<br>: |

Plaintiff, LILY ROSSI, by and through undersigned counsel hereby files this Civil Action Complaint against Defendants MPW INDUSTRIAL SERVICES, INC., PEDRO SALCITO, ASTON AGUILERA, and JASON MARLOWE (collectively "Defendants") and avers the following:

**PARTIES**

1. PLAINTIFF LILY ROSSI (hereinafter also referred to as "PLAINTIFF") is an individual female, who is a resident of the state of Minnesota.

2. At all times material, Defendant MPW INDUSTRIAL SERVICES, INC. (hereinafter referred to as "Defendant MPW") has a corporate headquarters located at 9711 Lancaster Road SE, Hebron, OH 43025.

3. At all times material, Defendant MPW operates a place of business at 801 Front St., Steelton, PA 17113.

4. At all times material, PEDRO SALCITO (hereinafter referred to as "Defendant SALCITO") was and is employed for Defendant MPW as an Industrial Cleaner.

5. At all times material, Defendant SALCITO identified as a male.

1

6. At all times material, Defendant SALCITO held supervisory authority over PLAINTIFF.

7. At all times material, ASTON AGUILERA (hereinafter referred to as "Defendant AGUILERA") was and is employed for Defendant MPW as a Manager.

8. At all times material, Defendant AGUILERA identified as a male.

9. At all times material, Defendant AGUILERA held supervisory authority over PLAINTIFF.

10. At all times material, JASON MARLOWE (hereinafter referred to as "Defendant MARLOWE") was and is employed for Defendant MPW as Human Resources Manager.

11. At all times material, Defendant MARLOWE identified as a male.

12. At all times material, Defendant MARLOWE held supervisory authority over PLAINTIFF.

13. At all times material, Defendants were PLAINTIFF's joint and/or sole employer.

## NATURE OF THE ACTION

14. PLAINTIFF complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2003-17 (amended in 1972, 1978, by the Civil Rights Act of 1991, Pub. L. No. 102-166) ("Title VII"); 42 U.S.C.; and the Pennsylvania Human Relations Act, as amended, 43 P.S. 951, *et. seq.* ("PHRA") and seeks damages to redress the injuries PLAINTIFF has suffered as a result of being subjected to discrimination, retaliation, and wrongful termination by the aforementioned Defendants.

15. Furthermore, this action is to redress the Defendants' unlawful employment practices against PLAINTIFF, including Defendants' unlawful discrimination against PLAINTIFF because of her sex and for Defendants wrongful actions against PLAINTIFF leading up to, and including, her unlawful termination.

16. PLAINTIFF seeks declaratory and injunctive relief, actual damages, compensatory damages, punitive damages, reinstatement, attorneys' fees, litigation costs, and pre- and post-judgment interest as remedies for Defendants' violations of her rights.

17. Defendants systemically and willfully violated Plaintiff's rights under Title VII and the PHRA.

## JURISDICTION AND VENUE

18. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, which gives district courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

19. This Court has jurisdiction in that this action involves a Federal Question under Title VII.

20. The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

21. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343 which gives district courts original jurisdiction over (a) any civil action authorized by law to be brought by any person to redress the deprivation, under color of any State Law, statue, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States, and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of the civil rights.

22. Venue is proper in the Middle District of Pennsylvania based upon Defendants' residency and that a substantial part of the events or omissions giving rise to the claims occurred within Dauphin County in the Commonwealth of Pennsylvania in the Middle District of Pennsylvania. 28 U.S.C. § 1391(b).

3

## EXHAUSTION OF REMEDIES

23. On June 1, 2022, Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

24. Around November 7, 2022, the EEOC sent a Dismissal and Notice of Rights to PLAINTIFF by electronic mail.

25. Plaintiff's Charge of Discrimination was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

26. This action is hereby commenced within ninety (90) days of receipt of the Dismissal and Notice of Rights.

27. PLAINTIFF has complied with all administrative prerequisites to bring this lawsuit.

28. PLAINTIFF's PHRA claims are still pending because less than one year has elapsed since Plaintiff filed with the PHRC.

29. PLAINTIFF will seek to amend her complaint to assert the newly ripened causes of action under the PHRA against the parties referenced above. See Fed. R. Civ. P. 15(a) (Courts "freely give leave to amend when justice so requires"), 15(c) (Amendments "relate back" to the date of the original pleading), and 15(d) (Plaintiffs may "serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented.").

## MATERIAL FACTS

30. Around February 1, 2022, PLAINTIFF was hired by Defendant MPW as an Industrial Cleaner.

31. Throughout her employment, PLAINTIFF performed her job responsibilities in a satisfactory manner.

32. As PLAINTIFF's Manager, Defendant AGUILERA was responsible for meeting with employees, administering work schedules, assigning projects to employees, and disciplining (including terminating) PLAINTIFF and Defendant MPW employees for any infractions committed while working.

33. Upon information and belief, PLAINTIFF was the first and only female assigned to work in the industrial cleaning department at Defendant MPW's Steelton, PA location.

34. For the beginning of PLAINTIFF's employment, she was subjected to pervasive discrimination and harassment in the workplace due to her sex/gender.

35. By way of example, and by no means an exhaustive list, upon PLAINTIFF's hiring, Defendant AGUILERA asked Richard May, Regional Manager, if he thought PLAINTIFF "**would be a distraction**" to Defendant MPW's male employees.

36. Moreover, Defendant AGUILERA told PLAINTIFF to tell all Defendant MPW's male employees she was married to "**avoid any issues**."

37. However, PLAINTIFF was not married and was extremely uncomfortable lying about her relationship status.

38. Upon information and belief, Defendant AGUILERA told PLAINTIFF to tell male employees she was married so male employees would not prey on PLAINTIFF.

39. Moreover, Defendant MPW did not have restroom facilities for its female employees.

40. The only female trailer, which housed port-a-potties and was located on the far-end of Defendant MPW's complex, was always locked due to the male employees trashing said trailer.

41. As a result, the female trailer was locked at all times and inaccessible.

42. When PLAINTIFF asked security personnel to provide her with a key to use the trailer, Defendant MPW refused.

43. As a result, PLAINTIFF was forced to share a bathroom with her male coworkers.

44. PLAINTIFF was highly uneasy sharing a bathroom with her male coworkers.

45. In order for PLAINTIFF to comfortably use the bathroom, due to Defendant MPW's refusal to permit PLAINTIFF to use the female restroom, PLAINTIFF was forced to either ask a male staff to guard the bathroom door or, if none were available, call out to anyone who entered the bathroom to notify them she was using it.

46. Additionally, because PLAINTIFF had to use the male bathroom, PLAINTIFF did not have anywhere to dispose of feminine hygiene products.

47. This caused PLAINTIFF to feel extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

48. Around February 27, 2022, PLAINTIFF and Defendant SALCITO were outside walking around Defendant MPW's jobsite.

49. While outdoors, Defendant SALCITO asked PLAINTIFF if she was sad, to which PLAINTIFF responded, "yes."

50. Upon hearing PLAINTIFF's response, without asking for PLAINTIFF's permission, Defendant SALCITO hugged PLAINTIFF and kissed her cheek.

51. Stunned, PLAINTIFF immediately pulled away from Defendant SALCITO.

52. PLAINTIFF was shocked by Defendant SALCITO, as she never consented to him hugging or kissing her.

53. PLAINTIFF was extremely uncomfortable, humiliated, embarrassed, and emotionally distressed by Defendant SALCITO's conduct.

54. PLAINTIFF, in an effort to remove herself from Defendant SALCITO's presence, walked away from Defendant SALCITO and went to the control room to wait for her coworkers.

55. Defendant SALCITO followed PLAINTIFF into the control room.

56. While in the control room, Defendant SALCITO again asked PLAINTIFF if she was sad.

57. Before PLAINTIFF answered, Defendant SALCITO hugged PLAINTIFF.

58. **Defendant SALCITO's conduct intensified when he took PLAINTIFF's hand, placed it on under his shirt, on his nipples, kissed PLAINTIFF's neck, and began to moan**.

59. PLAINTIFF was in complete distress and shock as a result of Defendant SALCITO's sexually harassing conduct.

60. PLAINTIFF pulled away from Defendant SALCITO, left the control room, and sprinted towards the Safety Manager's office to report Defendant SALCITO's conduct.

61. While running to the Safety Manager's office, PLAINTIFF immediately texted Defendant AGUILERA stating, "**I was just sexually assaulted while I was left alone with [Defendant SALCITO], I'm crying and feel uncomfortable**."

62. PLAINTIFF met Defendant AGUILERA at the Safety Manager's office.

63. When Defendant AGUILERA saw PLAINTIFF, instead of comforting PLAINTIFF, Defendant AGUILERA told PLAINTIFF that her allegations were "very serious" and instructed her to sit on the bench outside the Safety Manager's office.

64. A few minutes later, Defendant AGUILERA asked PLAINTIFF to explain what had transpired between PLAINTIFF and Defendant SALCITO.

65. While PLAINTIFF was explaining the sexual assault, Defendant AGUILERA told PLAINTIFF to "get to the point."

7

66. After PLAINTIFF told Defendant AGUILERA how Defendant SALCITO assaulted her, Defendant AGUILERA told PLAINTIFF to wait until Defendant MPW's Safety Manager arrived.

67. While PLAINTIFF and Defendant AGUILERA waited for Defendant MPW's Safety Manager to arrive, Defendant AGUILERA told PLAINTIFF that **he did not know how to handle a case of sexual assault and/or harassment because Defendant MPW never employed a female staff member before**.

68. When the Safety Manager arrived, he directed PLAINTIFF to drive with Defendant AGUILERA to Defendant MPW's headquarters, where they could conduct a meeting.

69. At headquarters, PLAINTIFF had a meeting with Defendant AGUILERA, the Safety Manager, and Chief Executive Officer, Mike (last name unknown).

70. Before the meeting commenced, given the sensitivity of the topic, PLAINTIFF asked Mike and Defendant AGUILERA if she could speak with a female representative of Defendant MPW so she would feel more comfortable speaking about the sexual assault.

71. Defendant AGUILERA denied PLAINTIFF's request and told her that there were not any female representatives available.

72. During the meeting, PLAINTIFF explained how Defendant SALCITO assaulted her.

73. At the conclusion of the meeting, Mike asked PLAINTIFF if she wanted to go home.

74. Given PLAINTIFF was extremely distraught regarding the sexual assault, PLAINTIFF responded that she wanted to go home.

75. Mike told PLAINTIFF that Defendant MPW would conduct an investigation and contact her once the investigation was complete.

76. PLAINTIFF then went home.

77. A few hours later, PLAINTIFF received a call from Defendant MARLOWE.

78. As Human Resources Manager, Defendant MARLOWE was responsible for addressing employee complaints, administering payroll, and hiring and firing employees, including PLAINTIFF.

79. During the phone call, Defendant MARLOWE ensured PLAINTIFF that he would conduct an investigation.

80. Defendant MARLOWE also told PLAINTIFF that he would schedule a time to meet with her within the next few days to coordinate when she could return to work and interview PLAINTIFF so she could describe the sexual harassment she endured at the hands of Defendant SALCITO.

81. However, Defendant MARLOWE never contacted PLAINTIFF regarding her return to work or an interview.

82. Around February 28, 2022, PLAINTIFF filed a police report against Defendant SALCITO.

83. Around March 10, 2022, Defendant MARLOWE texted PLAINTIFF and asked if she was available on March 14, 2022 for a meeting.

84. PLAINTIFF informed Defendant MARLOWE that she was available.

85. Around March 14, 2022, Defendant MARLOWE called PLAINTIFF.

86. During the phone call, PLAINTIFF told Defendant MARLOWE she had a few questions for him.

87. In response, Defendant MARLOWE told PLAINTIFF "no need for those questions because you're terminated effective today."

88. PLAINTIFF was shocked by her termination.

89. PLAINTIFF then asked Defendant MARLOWE for the reason for her termination.

9

90. Defendant MARLOWE told PLAINTIFF she was terminated for "falsifying documents."

91. Defendants' reasoning for PLAINTIFF's termination is pretextual.

92. Upon information and belief, PLAINTIFF's termination was because of her sex/gender and/or opposition to Defendants' unlawful conduct and comments.

93. As a result of Defendants' actions, PLAINTIFF felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

94. As a result of the acts and conduct complained of herein, PLAINTIFF has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits and other compensation which such employment entails, and PLAINTIFF also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. PLAINTIFF has further experienced severe emotional and physical distress.

95. That as a result of Defendants' conduct, the PLAINTIFF was caused to sustain serious and permanent personal injuries, including but not limited to permanent psychological injuries.

96. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, PLAINTIFF demands Punitive Damages against all the Defendants jointly and severally.

97. PLAINTIFF further claims aggravation, activation and/or exacerbation of any preexisting condition.

98. PLAINTIFF claims that Defendants unlawfully discriminated against PLAINTIFF because of her sex and because she complained of an opposed the unlawful conduct of Defendants related to the above protected class.

10

99. PLAINTIFF further claims constructive and/or actual discharge to the extent PLAINTIFF is terminated from PLAINTIFF's position as a result of the unlawful discrimination and retaliation.

100. The above are just some examples, of some of the discrimination and retaliation to which Defendants subjected PLAINTIFF to on a continuous and on-going basis throughout PLAINTIFF's employment.

101. The Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

102. PLAINTIFF claims alternatively that PLAINTIFF is an Independent Contractor, and PLAINTIFF makes all applicable claims for the above conduct and facts under the applicable law pertaining to Independent Contractors. Furthermore, in such case, PLAINTIFF claims that Defendant owed and breached its duty to PLAINTIFF to prevent the harassment, discrimination, and retaliation and is liable therefore for negligence.

103. PLAINTIFF claims a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

**COUNT I**
**DISCRIMINATION**
**UNDER TITLE VII**
**(against Defendant MPW only)**

104. Plaintiff, Lily Rossi, hereby incorporates all allegations contained in the above paragraphs as fully as if they were set forth at length.

105. Title VII provides, in relevant part, that "it shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of [her] race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

11

106. Title VII further provides that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

107. Defendants engaged in unlawful employment practices prohibited by Title VII by intentionally discriminating against Plaintiff with respect to her compensation, terms, conditions of employment because of Plaintiff's sex. Defendants subjected Plaintiff to adverse tangible employment actions—defined as significant changes in Plaintiff's employment status, discipline, denial of training, failure to promote, reassignment with significantly different job responsibilities, and decisions causing changes in significant changes in her employment benefits.

108. Plaintiff's protected characteristics played a determinative factor in Defendants' decisions.

109. Defendants cannot show any legitimate nondiscriminatory reasons for their employment practices and any reasons proffered by Defendants for their actions against Plaintiff are pretextual and can readily be disbelieved.

110. Alternatively, Plaintiff's protected status played a motivating part in Defendants' decisions even if other factors may also have motivated its actions against Plaintiff.

111. Defendants acted with the intent to discriminate.

112. Defendants acted upon a continuing course of conduct.

113. Defendants acted with the intent to discriminate against Plaintiff because of her sex.

114. Defendants wrongfully terminated Plaintiff, in violation of Title VII, solely or in part, because of her sex.

115.    Defendants wrongfully terminated Plaintiff, in violation of Title VII solely or in part because PLAINTIFF is a female.

116.    As a result of the Defendant MPW's violations of Title VII, Plaintiff has suffered damages including but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**COUNT II**
**HOSTILE WORK ENVIRONMENT**
**UNDER TITLE VII**
**(against Defendant MPW only)**

117.    Plaintiff, Lily Rossi, hereby incorporates all allegations contained in the above-mentioned paragraphs as fully as if they were set forth at length.

118.    Title VII also prohibits hostile work environment harassment, defined as unwanted comments or conduct regarding the plaintiff's protected characteristics that have the purpose or effect of unreasonably interfering with the terms and conditions of the plaintiff's employment. Harris v. Forklift Systems, 510 U.S. 17, 21 (1993).

119.    An employer is strictly liable for supervisor harassment that "culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998).

120.    Respondent superior liability for the acts of non-supervisory employees exists where "the defendant knew or should have known of the harassment and failed to take prompt remedial action." Andrews v. city of Philadelphia, 895 F.2d 1469, 1486 (3d Cir. 1990).

121.    Employer liability for co-worker harassment also exists where "the employer failed to provide a reasonable avenue for complaint." Huston v. Procter & Gamble Paper Prods. Corp., 568 F.3d 100, 105 (3d Cir. 2009).

122.    The Third Circuit has held that the retaliation provision of Title VII "can be offended by harassment that is severe or pervasive enough to create a hostile work environment." <u>Jensen v. Potter</u>, 435 F.3d 444, 446 (3d Cir. 2006).

123.    Here, Defendant's conduct occurred because of Plaintiff's legally protected characteristics and was severe or pervasive enough to make a reasonable person of the same legally protected class (sex/gender-female) believe that the conditions of employment were altered, and that the working environment was intimidating, hostile, or abusive.

124.    Plaintiff's supervisors had the authority to control Plaintiff's work environment, and they abused that authority by permitting Defendant SALCITO to engage in conduct despite knowing of it, thus creating a hostile work environment.,

125.    Sexually explicit and verbally- and physically- harassing conduct filled the environment of Plaintiff's work area.

126.    Defendant MPW, and its' supervisory employees, knew that the sexually explicit and verbally- and physically- harassing conduct filled Plaintiff's work environment.

127.    Sexually explicit verbally- and physically- harassing conduct occurred on an almost if not daily basis.

128.    Sexually explicit verbally- and physically- harassing conduct caused Plaintiff to sustain severe emotional distress resulting in physical illness.

129.    Plaintiff subjectively regarded the sexually explicit verbally- and physically- harassing conduct as unwelcome and unwanted and objectively opposed the conduct.

130.    The conduct was both severe and pervasive.

131.    The conduct was emotionally damaging and humiliating.

132.    The conduct unreasonably interfered with Plaintiff's work performance.

133.    The conduct was so extreme that it resulted in material changes to the terms and conditions of Plaintiff's employment.

134.    Defendant MPW, and its' supervisory employees, provided a futile avenue for complaint.

135.    Defendant MPW, and its' supervisory employees, acted upon a continuing course of conduct.

136.    As a result of Defendant MPW and its' supervisory employees' violations of Title VII, Plaintiff has suffered damages including but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**COUNT III**
**RETALIATION**
**UNDER TITLE VII**
**(against Defendant MPW only)**

137.    Plaintiff, Lily Rossi, hereby incorporates all allegations contained in the above paragraphs as fully as if they were set forth at length.

138.    Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides that it shall be an unlawful employment practice for an employer: "(1) to…discriminate against any of his employees…because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any matter in an investigation, proceeding, or hearing under this subchapter."

139.    Informal complaints and protests can constitute protected activity under the "opposition" clause of 42 U.S.C. § 2000e-3(a). Moore v. City of Philadelphia, 461 F.3d 331, 343 (3d Cir. 2006) ("Opposition to discrimination can take the form of informal protests of discriminatory employment practices, including making complaints to management.").

15

140.    Title VII's anti-retaliation provision also protects employees who speak out about discrimination by answering questions during an employer's internal investigation. Crawford v. Metropolitan Gov't of Nashville and Davidson Cty., Tennessee, 555 U.S. 271, 277 (2009) (declaring that there is "no reason to doubt that a person can 'oppose' by responding to someone else's question just as surely as by provoking the discussion, and nothing in the statute requires a freakish rule protecting an employee who reports discrimination on her own initiative but not one who reports the same discrimination in the same words when her boss asks a question.").

141.    Retaliation need not be job-related to be actionable under Title VII—an employer can effectively retaliate against an employee by taking actions not directly related to her employment or by causing her harm outside the workplace. White, 548 U.S. at 61-62 (rejecting authority from the Third Circuit and others requiring that the plaintiff suffer an adverse employment action in order to recover for retaliation).

142.    "[A] plaintiff need not prove the merits of the underlying discrimination complaint, but only that 'he was acting under a good faith, reasonable belief that a violation existed.'" Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1085 (3d Cir. 1996); Griffiths v. CIGNA Corp., 988 F.2d 457, 468 (3d Cir. 1993); and Sumner v. United States Postal Service, 899 F.2d 203, 209 (2d Cir. 1990), overruled on other grounds by Miller v. CIGNA Corp., 47 F.3d 586 (3d Cir.1995).

143.    An employee need not be a member of a protected class to be subject to actionable retaliation under Title VII. See Moore, 461 F.3d at 342 ("Title VII's whistleblower protection is not limited to those who blow the whistle on their own mistreatment or on the mistreatment of their own race, sex, or other protected class."

144. Title VII not only bars retaliation against the employee who engaged in the protected activity; it also bars retaliation against another employee if the circumstances are such that the retaliation against that employee might well dissuade a reasonable worker from engaging in protected activity. See Thompson v. North American Stainless, LP, 131 S. Ct. 863, 868 (2011).

145. Here, the Defendant MPW, and its' supervisory employees, retaliated against Plaintiff because of her protected activity under Title VII.

146. Plaintiff acted under a reasonable, good faith belief that her right to be free from discrimination on the basis of sex/gender was violated.

147. Plaintiff was subjected to materially adverse actions at the time or after the protected conduct took place.

148. Defendant MPW, and its' supervisory employees, engaged in an unlawful discriminatory practice by retaliating and otherwise discriminating against Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

149. There was a causal connection between the Defendant MPW, and its' supervisory employees, materially adverse actions, and Plaintiff's protected activity.

150. Defendant MPW, and its' supervisory employees, actions were "materially adverse" because they were serious enough to discourage a reasonable worker from engaging in protected activity.

151. Defendant MPW, and its' supervisory employees, acted upon a continuing course of conduct.

152. Plaintiff will rely on a broad array of evidence to demonstrate a causal link between their protected activity and the Defendant MPW, and its' supervisory employees, actions taken against her, such as the unusually suggestive proximity in time between events, as well as

Defendant MPW supervisory employees' antagonism and change in demeanor toward Plaintiff after Defendant MPW, and its' supervisory employees, became aware of Plaintiff's protected activity.

153.    As a result of the Defendant MPW, and its' supervisory employees, violations of Title VII, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**COUNT IV**
**DISCRIMINATION**
**UNDER PHRA § 955**
**(against Defendant MPW only)**

154.    Plaintiff, Lily Rossi, repeats and realleges every allegation made in the above paragraphs of this complaint.

155.    Plaintiff's PHRA claims are still pending before the EEOC and PHRC.

156.    Plaintiff will seek leave to amend this complaint at the appropriate time to assert her PHRA claims against Defendants. See Federal R. Civ. P. 159a) (Courts "freely give leave to amend when justice so requires"), 15(c) (Amendments "relate back" to the date of the original pleasing), and 15(d) (Plaintiff may "serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented").

**COUNT V**
**RETALIATION**
**UNDER PHRA §955**
**(against all Defendants)**

157.    Plaintiff, Lily Rossi, repeats and realleges every allegation made in the above paragraphs of this complaint.

18

158.    Plaintiff's PHRA claims are still pending before the EEOC and PHRC.

159.    Plaintiff will seek leave to amend this complaint at the appropriate time to assert her PHRA claims against Defendants. See Federal R. Civ. P. 159a) (Courts "freely give leave to amend when justice so requires"), 15(c) (Amendments "relate back" to the date of the original pleasing), and 15(d) (Plaintiff may "serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented").

**COUNT VI**
**DISCRIMINATION**
**UNDER PHRA – AIDING AND ABETTING**
**(against individually named Defendants only)**

160.    Plaintiff, Lily Rossi, repeats and realleges every allegation made in the above paragraphs of this complaint.

161.    Plaintiff's PHRA claims are still pending before the EEOC and PHRC.

162.    Plaintiff will seek leave to amend this complaint at the appropriate time to assert her PHRA claims against Defendants. See Federal R. Civ. P. 159a) (Courts "freely give leave to amend when justice so requires"), 15(c) (Amendments "relate back" to the date of the original pleasing), and 15(d) (Plaintiff may "serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented").

**JURY DEMAND**

PLAINTIFF requests a jury trial on all issues to be tried.

**DEMAND TO PRESERVE EVIDENCE**

The Defendants are hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to her potential claims, her claims to damages, to any defenses to same, including, but not limited to electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spreadsheets, images, cache memory,

19

payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation.

## **PRAYER FOR RELIEF**

**WHEREFORE**, PLAINTIFF demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, liquidated damages, statutory damaged, attorney's fees, costs, and disbursement of action; and for such other relief as the Court deems just and proper.

**DEREK SMITH LAW GROUP, PLLC**

*/s/ Tova L. Rabin_____*
Tova L. Rabin, Esq.
1835 Market Street
Suite 2950
Philadelphia, PA 19103
tova@dereksmithlaw.com
267-332-1692

January 31, 2023

20